UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

SIDAHMED EDAHI,                                                          Petitioner,

v.                                                      Civil Action No. 4:25-cv-129-RGJ

MIKE LEWIS, Jailer, Hopkins County Jail;
SAMUEL OLSON, Field Office Director,
Chicago Field Office, Immigration and Customs
Enforcement

                                                                        Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Sidahmed Edahi's Writ of Habeas Corpus. [DE 1]. Respondents responded on November 6, 2025. [DE 12]. Petitioner replied on November 10, 2025. [DE 13]. By agreement of the Parties, the Court did not hold a Show Cause hearing, but instead set a briefing schedule. [DE 8]. This matter is ripe for adjudication. For the reasons below, the Court **GRANTS** Edahi's Petition for a Writ of Habeas Corpus.

**I.        BACKGROUND**

Petitioner Sidahmed Edahi, ("Edahi") is a native and citizen of Mauritania. [DE 1 at 1]. He has been present in the United States since early 2023. [*Id.*]. On May 28, 2025, Edahi was at Immigration Court for an Individual Hearing. [*Id.*]. Instead of a hearing, Edahi was arrested by Immigration and Customs Enforcement ("ICE") officials. [*Id.*].

When Edahi first entered the United States on May 5, 2023, Edahi was issued a Notice to Appear and released from custody. [*Id.* at 4]. His immigration proceedings were set before the Indianapolis Immigration Court. [*Id.*]. On May 27, 2025, Petitioner and his counsel came to the Indianapolis Immigration Court for his final removal hearing. "Near the end of the hearing, but prior its completion, Petitioner was detained by ICE. Instead of allowing the hearing to be completed, ICE detained Petitioner and the Immigration Judge informed Petitioner's counsel that

instead of providing a closing argument, that a written closing statement should be provided.  [DE 1 at 4]. Edahi was detained without bond pursuant "to the authority contained in Section 236" of the Immigration and Nationality Act ("INA"). [DE 1-2 Notice of Custody Redetermination]. The day after his detention, on May 28, 2025, a warrant was issued pursuant to INA section 236 (8 U.S.C. section 1226). [DE 1- 3, Warrant for Arrest]. Since Petitioner's arrest, no decision has been made on his asylum application. [DE 1 at 5]. Petitioner's counsel has sought to have Petitioner's case transferred to the detained court docket, yet, the Immigration Court has refused to do so. [*Id.*]. Under Section 1226, noncitizens have a right to a custody determination or bond hearing reviewed by an Immigration Judge ("IJ"). *See* 8 U.S.C. § 1226; 8 C.F.R. §§ 1236.1(c)(8), (d)(1). At a hearing on July 28, 2025, "the IJ determined that Petitioner was eligible for bond under 8 U.S.C. § 1226 and ordered that Petitioner should be released."  [*Id.*]. On October 3, 2025, the immigration judge issued a decision finding Petitioner removable under 8 U.S.C. § 1182(a)(6)(A)(i). [DE 12-4].  That decision would have become final on November 3, 2025 or, upon a timely appeal of the decision to the Board of Immigration Appeals (BIA), once the BIA issues its decision. Petitioner has a pending appeal of the immigration judge's decision. [DE 12-5, Appeal to BIA].

ICE contends that based on interim guidance from DHS, issued July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," only those noncitizens who have already been admitted into the United States are eligible to be released during removal proceedings and all other noncitizens are subject to mandatory detention, under 8 U.S.C. § 1225 ("Section 1225"), not Section 1226 ("Section 1226"). [*Id.* at 6]. This is a reversal of ICE's longstanding policy. [*Id.*].

Edahi asserts that the United States illegally detained him under Section 1225 instead of Section 1226. [DE 1 at 16-17]. And that this detention is in violation of his Due Process Rights under the Fifth Amendment, and in violation of the INA. Therefore, Edahi seeks release from his

2

detention, or in the alternative, to hold a bond hearing before a neutral IJ to determine whether he should remain in custody. [*Id.* at 17].

In response, the United States makes three contentions. First, this Court has no jurisdiction to review the Habeas challenge. [DE 12 at 57]. Second, Edahi is properly detained pursuant to Section 1225, not Section 1226. [DE 12 at 61]. And third, even if Edahi is detained pursuant to Section 1226, Edahi cannot be released *prior* to a custody redetermination hearing. [DE 12 at 67].

## II.   JURISDICTION

### A.  Standard

District courts have jurisdiction only where Congress has provided. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The limits of this Court's jurisdiction are "not to be expanded by judicial decree." *Id.* "A district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States." *Maldonado v. Olson*, 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (citing 28 U.S.C. § 2241(c)(3)). Although the Court "may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

### B.  Discussion

Despite numerous decisions to the contrary in this District and across the country, the United States continues to assert that this Court does not have jurisdiction under 8 U.S.C. § 1252(b)(9), or § 1252(g).

First, the United States contends that § 1252(g) bars Edahi's claims because § 1252(g) strips the Court of jurisdiction to review claims "arising from the decision or action by [DHS] to commence proceedings, adjudicate cases, or execute removal orders against any alien." [DE 12 at 57 (quoting 8 U.S.C. § 1252(g))]. Respondents assert that because Edahi is "challenging ICE's

decision to detain him" § 1252(g) strips this Court of jurisdiction. [DE 12 at 57]. Petitioner claims that "[a]n [IJ's] review of a bond determination is a distinct proceeding from a [non-citizen's] underlying removal proceeding" and because Edahi is seeking review of his unlawful detention only, **§** 1252(g) does not bar this Court of jurisdiction. [DE 13 at 92].

Second, the United States claims that § 1252(b)(9) bars this Court from reviewing Edahi's claims as 1252(b)(9) requires the Court to answer questions "arising from any action taken or proceeding brought to remove" Edahi. [DE 12 at 59 (quoting 8 U.S.C. § 1252(b)(9))]. Edahi reiterates that he is not challenging his removal proceedings, but instead is solely "seeking review of his unlawful detention." [DE 13 at 91-92]. That is, Edahi is not challenging "a removal order or anything else listed in Section 1252(b)(9) and (g) which would strip this court of jurisdiction." [*Id.* at 92].

In *DHS v. Regents of the Univ. of Cal.,* 591 U.S. 1, 19 (2020), the Supreme Court held that § 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . .removability will be determined'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018)). The Supreme Court has also rejected that Section 1252(g) is similarly narrow. That provision limits review of cases "arising from" decisions "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court rejected the suggestion that § 1252(g) covers "all claims arising from deportation proceedings" or imposes "a general jurisdictional limitation." *Reno v. American-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999). "A claim of unlawful detention does not arise from the commencement of removal proceedings 'within the meaning of § 1252(g) simply because the claim[ ] relate[s] to that discretionary,

prosecutorial decision.'" *Alonso v. Tindall,* 2025 WL 3083920, at *2 (W.D. Ky. Nov. 4, 2025) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025))[1].

Edahi's petition for habeas challenges his detention, not the removal or discretionary acts of the Attorney General. [DE 13 at 92]. Edahi seeks release from an unlawful detention, not any judgment on the removal itself. [*Id.*]. Trial courts have routinely found jurisdiction exists in these circumstances, including within this district. *Alsono*, 2025 WL 3083920, at *2; *Martinez-Elvir v. Olson*, 2025 WL 3006772, at *3 (W.D. Ky. Oct. 27, 2025) (holding that because "Petitioner challenges the statutory and constitutional validity of his continued detention. . . and does not directly challenge his removal proceedings, the court finds that it has jurisdiction"); *Espinoza, et al., v. Kaiser, et al.,* 2025 WL 2675785, at *9 (E.D. Cal. Sep. 18, 2025) (holding that because "Petitioners seek their immediate release from custody, which they contend violates the Constitution of the United States" the court had proper habeas jurisdiction); *Salazar v. Kaiser,* 2025 WL 2456232, at *7 (E.D. Cal. Aug. 26, 2025) (holding that in a challenge of whether Section 1229a proceedings or Section 1225 proceedings controlled Petitioner's detention, Petitioner properly invoked habeas jurisdiction); *Munoz Materano v. Arteta*, 2025 WL 2630826, at *10 (S.D.N.Y. Sep. 12, 2025) (holding that the district court had proper jurisdiction to review a habeas petition even over concerns of expedited removal); *Orellana v. Baker,* 2025 WL 2444087, at *3 (D. Md. Aug. 25, 2025) (holding that because "Orellana does not ask this Court to enter an order staying ICE's execution of his removal order" but instead "Orellana challenges the legality of his detention pending the effectuation of his removal order. This Court has jurisdiction to evaluate this challenge.").

Lastly, the United States' reliance on *Karki v. Jones*, No. 25-3440, 2025 App. LEXIS 20660 (6th Cir. Aug. 13, 2025) is misplaced. The United States asserts that in *Karki,* the Sixth

---

[1] *rehearing denied*, 155 F.4th 187 (2d Cir. 2025).

Circuit held that § 1252(g) bars habeas review of lower courts. However, the petitioner in *Karki* did not seek "core" habeas relief or relief from detention, which is the issue before this Court. *Karki*, 2025 App. LEXIS 20660 at *9. Because of that, the Sixth Circuit found that Section 1252(g) barred jurisdiction from the lower court. *Id.* The Sixth Circuit did not discuss whether lower courts have proper jurisdiction when faced with "core" habeas relief. This Court, along with the great majority of courts across the country, have found jurisdiction proper where the "core" request of habeas relief is sought. *See, e.g., Alsono*, 2025 WL 3083920, at *2; *see also Martinez-Elvir*, 2025 WL 3006772, at *3. Because Edahi is seeking the "core" habeas relief, his release from detention, the Court has jurisdiction to review his petition.

### III.    Exhaustion of Remedies

Neither party asserted any exhaustion-related arguments. However, because many decisions in similar cases by district court within the Sixth Circuit discuss this principal, this Court will consider the issue *sua sponte* for purposes of completeness. *See Martinez-Elvir*, 2025 WL 3006772, at *4.

When neither a statute nor rule mandates exhaustion, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). This is also known as "prudential exhaustion." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

Here, no applicable statute or rule mandates exhaustion. As a result, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson,* 725 F.3d at 593. The Sixth Circuit has not adopted any formal test, but instead, many trial courts within the Sixth Circuit borrow the Ninth Circuit test from *United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). *See Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *3 (E.D. Mich. Sep. 9, 2025); *Villalta v. Greene*,

2025 WL 2472886, at *2 (N.D. Ohio Aug. 5, 2025).   In the alternative, a court can also choose to waive exhaustion, when the "legal question is fit for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). Under the Ninth Circuit test:

> Courts may require prudential exhaustion when
>
> > (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
> > (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
> > (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos,* 2025 WL 2496379, at *4 (discussing the test from *Cal. Care Corp.*, 709 F.2d at 1248).

First, the central question in this matter is whether the detention provision in Section 1225 or Section 1226 applies to Edahi. The question  is a purely legal determination of statutory interpretation, which this Court, and other courts within this circuit, have already addressed. *See Pizarro Reyes*, 2025 WL 2609425, at *3. Alternatively, even if an agency interprets the relevant statutes, this Court is neither bound by or deferential to any agency interpretation of a statute. *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) ("courts need not and under the APA *may not* defer to an agency interpretation of the law simply because a statute is ambiguous") (emphasis added). Therefore, the Court does not need any agency expertise to aid in consideration of this purely legal determination. *Id.*

Second, because of the alleged Constitutional violation, an appeal to an administrative review board, here the BIA, is not necessary. The Sixth Circuit has held that due process challenges generally do not require exhaustion because the BIA cannot review constitutional challenges. *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006); *Lopez-Campos,* 2025 WL 2496379, at *4 (holding that because Lopez-Campos' habeas petition includes a due process claim, the appeal and process through an administrative scheme "is likely futile").

7

And lastly, the United States has made clear their position on Section 1225 as it applies to Edahi and other similarly situated noncitizens. The United States has taken this position in similar cases before this Court, and across the country. *See e.g., Pizarro Reyes*, 2025 WL 2609425, at \*4; *Alonso*, 2025 WL 3083920, at \*4; *Patel v. Tindall*, 2025 WL 2823607, at \*2-4 (W.D. Ky. Oct. 3, 2025); *Simpiao v. Hyde*, 2025 WL 2607924, at \*7 (D. Mass. Sep. 9, 2025). Therefore, it is unlikely that any administrative review would lead to the United States changing its position and precluding judicial review. *Sterkaj*, 439 F.3d at 279. As a result, based on the above factors, this Court finds that prudential exhaustion is not required.

Furthermore, courts can also waive exhaustion when it may be futile, when administrative processes may be untimely or may lead to unnecessary hardship. This typically occurs when the legal question is ripe for resolution, and any delay would mean unnecessary hardship for the Petitioner. *Lopez-Campos*, 2025 WL 2496379, at \*5 ("[b]ecause exhaustion would be futile and unable to provide Lopez-Campos with the relief he requests in a timely manner, the Court waives administrative exhaustion and addresses the merits of the habeas petition."); *Pizarro Reyes* 2025 WL 2609425, at \*4 ("if the Court requires administrative exhaustion, Pizarro Reyes faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his removal. As a result, the Court will waive administrative exhaustion."); *Simpiao,* 2025 WL 2607924, at \*6-7 (holding that because "the policy concerns animating the common-law exhaustion" are absent, "waiver of exhaustion is warranted"). And as the Court in *Lopez-Campos* noted, bond appeals before the BIA on average take six months to complete. *Lopez-Campos*, 2025 WL 2496379, at \*5 (citing to *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)). Prolonging Edahi's detainment would mean unnecessary hardship, especially when the Court is able to resolve the purely legal question now. *Id.*

For all these reasons, the Court waives the exhaustion requirement.

## IV.   DISCUSSION

### A.  Section 1225 vs. Section 1226

The United States argues Section 1225 applies to Edahi's detention, not Section 1226.

    1.   <u>The Statutory Language.</u>

The first statute, 8 U.S.C. § 1225 titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" states, in pertinent part,

**(b) Inspection of applicants for admission**
    **(2) Inspection of other aliens**

        **(A) In general**
        Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A). For purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

The second provision at issue, 8 U.S.C. § 1226, titled "Apprehension and detention of aliens" states:

**(a) Arrest, detention, and release**
On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
    (1) May continue to detain the arrested alien; and
    (2) May release the alien on—
        (A) Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General ...

8 U.S.C. § 1226(a).

Under Section 1225(a)(1,) "applicants for admission," are noncitizens "present in the United States who [have] not been admitted." Section 1225(a)(1). Petitioner does not dispute that

he is an applicant for admission under the statute. [DE 1 at 11]. Under subsection (b), certain 'applicants for admission' may be subject to removal proceedings. *Dep't of Homeland Sec. v. Thuraissigam*, 591 U.S. 103, 108-09 (2020). "Admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Section 1225, with limited exception, is a mandatory detention provision. Section 1225(b)(2)("if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a . . .") (emphasis added). Noncitizens detained under Section 1225(b)(2) may be released only if they are paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

Section 1226 authorizes "the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2019). Section 1226(a) creates a discretionary framework for noncitizens arrested and detained upon an arrest "warrant issued by the Attorney General." Section 1226(a). The Attorney General "may continue to detain the arrested alien," "may release the alien" on bond of at least $1,500 or "may release the alien" on parole. *Id.* The arresting immigration officer makes an initial custody determination. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). However, noncitizens can appeal that determination in a bond hearing before an IJ. *Id.* Congress recently amended Section 1226(c). Through the Laken Riley Act, Congress added two new mandatory provisions to the general discretionary framework of Section 1226. Now, as codified in Section 1226(c), the Attorney General must detain a noncitizen if (i) the noncitizen is inadmissible because they are in the United States without being admitted or paroled, obtained documents for admission through misrepresentation or fraud, or lacks valid documentation, or, "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential

elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Section 1226(c)(1)(E)(i)-(ii).

To summarize, if detained under Section 1225(b)(2)(A), the noncitizen must remain in custody for the duration of their removal proceedings, but if detained under Section 1226, the noncitizen is entitled to a bond hearing before an IJ. *Rodriguez v. Bostock*, 779 F. Supp.3d 1239, 1247 (W.D. Wash. 2025). Section 1225 essentially "supplement[s]" Section 1226. *Rodriguez Disa v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

2.    <u>Statutory Application to Edahi.</u>

As an initial matter, the detention papers and arrest warrant both state that Edahi was detained and arrested pursuant to Section 1226. This requires a bond hearing. Importantly, this has already taken place and he was ordered released on bond. It remains unclear why he was not released on bond at that time.

Regardless, the United States contends that Edahi is not only an applicant for admission but is also "seeking admission" pursuant to Section 1225(b)(2)(A) and therefore is subject to the mandatory detention provision of Section 1225(b)(2)(A). [DE 12 at 62]. The question before the Court is whether "an alien present in the United States who has not been admitted" includes someone like Edahi, who is not presently seeking admission but has been in the United States for at least two years without inspection or authorization. [2] In other words, the Court must decide whether Edahi, who may be an "applicant for admission" and who was detained pursuant to an

---

[2] Neither Party contends that Edahi's pending application for asylum impacts whether he is "seeking admission" under Section 1225(b)(2)(A). Still, it would not be dispositive because he did not apply for asylum when he was 'arriving' to the United States as the statute would require. *See* Section 1225(b); *see, e.g., Santos Francos v. Raycraft*, 2025 WL 2977188, at *7 (E.D. Mich. Oct. 21, 2025) ("And even if Respondent argues that Santos Franco is 'seeking admission' because he applied for asylum ..., that was not done when he was 'arriving' to [the United States]. So, the applicability of § 1225(b)(2)(A) would still be incorrect.")

arrest warrant, is also "seeking admission" pursuant to Section 1225(b)(2)(A). The United States contends he is. [DE 12 at 62]. If so, he would be placed in mandatory detention under Section 1225(b)(2)(A) and his habeas petition would be denied. *Id.* If not, then he was been "arrested and detained pending a decision on whether [he] is to be removed from the United States" pursuant to Section 1226(a). Petitioner contends that Section 1226 should control. [DE 13 at 92]. He further contends that because Section 1226 controls his Fifth Amendment due process rights have been violated and he would be entitled to the full due process under the law. [DE 1 at 16]; *Maldanado v. Baker,* 2025 WL 2968042, at *9-10 (D. Md. Oct. 21, 2025).

When interpreting statues, "the inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (internal quotes omitted). However, ambiguity is not determined by examining provisions in isolation. *Rodriguez v. Noem*, No. 1:25-CV-1196, 2025 WL 3022212, at *5 (W.D. Mich. Oct. 29, 2025). "[T]he 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). This Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Raimondo*, 603 U.S. at 400.

"It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walke*, 533 U.S. 167, 174 (2001)). "[E]very clause and word . . . should have meaning." *United States, ex rel. Polansky v. Exec. Health Res., Inc.,* 599 U.S. 419, 432 (2023) (internal quotation marks and citation omitted). This includes titles and section headings. *See Dubin v. United States*, 599 U.S.

110, 120-21 (2023). "[A] title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring)).

*i. The Title and Statutory Scheme.*

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The added word of "arriving" supports the notion that the statute governs "arriving" noncitizens, not those present already. This is further reinforced by the text of the statute itself, which is focused on inspections for noncitizens when they arrive via "crewman" or as "stowaways." 8 U.S.C. § 1225(b)(2)(B)(i)-(iii) ("who is a crewman. . . who is a stowaway.") This limited, and more specific methods of entry suggest that Section of 1225(b)(2) is limited to noncitizens arriving at a border or port and are *presently* "seeking admission" into the United States. *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing to *Dubin*, 599 U.S. at 118 (2023)). This reinforces the interpretation that Section 1225(b)(2) is more limited in scope than the United States asserts. *Id.*

Moreover, the title is divided into sections which are separated by semicolons. The first phrase is "inspection by immigration officer." However, Edahi was already inspected, issued a Notice to Appear, and released from custody. [DE 1 at 4]. The part of the heading specifying "expedited removal" specifically includes the words "arriving aliens." Edahi is already in the country and not arriving. And the last phrase, "referral for hearing," is also inapplicable as he was already in 1229 proceedings at the time of his detention. For all these reasons, the text of the title indicates that § 1225 governs "arriving" noncitizens, while § 1226 focuses on the apprehension and detention of those noncitizens already in the country.

The statutory scheme provides context, too. In *Jennings*, the Supreme Court stated that Section 1226 is the "default rule" and "applies to aliens already present in the United States."

13

*Jennings*, 583 U.S. at 288; 301. The inclusion of a "default" right after a more limited and narrow statute is "likely no coincidence." *Pizarro Reyes*, 2025 WL 2609425, at *5. It is "consonant with the core logic of our immigration system" that different statutory schemes would apply to non-citizens arriving at the border compared to non-citizens already within the country. *Martinez v. Hyde,* 792 F. Supp. 3d 211, 222 (D. Mass 2025).

Also, the Laken Riley Act recently amended Section 1226. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.,* 514 U.S. 386, 397 (1995). The Laken Riley Act added new mandatory detention provisions to an otherwise discretionary statute. Now, in Section 1226(c), the Attorney General must detain a noncitizen if (i) the noncitizen is inadmissible because they are in the United States without being admitted or paroled, obtained documents for admission through misrepresentation or fraud, or lacks valid documentation, or, "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Section 1226(c)(1)(E)(i)-(ii).If Section 1225(b)(2)(A) governed certain noncitizens as the United States claims it does, the Laken Riley Act would have been redundant and unnecessary. That's "because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted,' ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizzaro Reyes,* 2025 WL 2609425, at *5 (quoting Section 1225(b)(2)(A)). And further, "[courts] do not lightly assume Congress adopts two separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022).

ii. *Plain Language of Section 1225.*

Section 1225(a)(1) states that an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States." Under § 1225(b)(2) any applicant for admission who "is not clearly and beyond a doubt entitled to be admitted" must be detained. Respondents take the position that "all unadmitted and uninspected aliens are 'applicants for admission,' regardless of their proximity to the border, the length of time they have been present here, or whether they ever had the subjective intent to properly apply for admission." [DE 12 at 64]. As a result, the United States asserts the "[i]t therefore follows that an 'applicant for admission' and a person 'seeking admission' are one and the same." [*Id.*]. Respondents' interpretation of § 1225(b)(2)(A), therefore, would call for mandatory detention of every noncitizen present in the United States who has not been lawfully admitted. This interpretation much too broad. *See Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("[A]ccepting Respondents' one size-fits-all application of 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction.").

Respondents further contend that, "Petitioner is seeking relief from removal. He fought against the government's argument that he was removable before the immigration judge (and lost), and he is currently seeking relief from removal because he appealed the immigration judge's decision to the BIA. Petitioner is an "applicant for admission" who is seeking relief from removal, and, consequently, he is detained under § 1225(b)(2)(A)." [DE 12 at 65 (citation omitted)]. Neither Party contends that Edahi's pending application for asylum impacts whether he is "seeking admission" under Section 1225(b)(2)(A). Still, it would not be dispositive because he did not apply for asylum when he was "arriving" to the United States as the statute would require. *See* Section 1225(b); *see, e.g., Santos Francos v. Raycraft,* 2025 WL 2977188, at *7 (E.D. Mich. Oct. 21, 2025) ("And even if Respondent argues that Santos Franco is 'seeking admission' because he applied for

asylum ..., that was not done when he was 'arriving' to [the United States]. So, the applicability of § 1225(b)(2)(A) would still be incorrect."). He is no longer being inspected, but has been moved through the process. There is simply no logical way to interpret Edahi as "arriving" or "seeking admission" given his progress through the immigration process.

The United States interpretation of Section 1225 ignores or simply reads out the word "seeking" in the phrase "seeking admission." Section 1225(b)(2)(A) states, "[s]ubject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." (emphasis added). The term "seeking admission" is *not* defined in the statute. Seeking means "to go in search of" and is synonymous with "pursue." *Seeking*, WEBSTER'S DICTIONARY (11th ed. 2024). Other courts have stated that seeking "implies action." *Lopez-Campos,* 2025 WL 2496379, at *6.

### iii.  Plain Language of Section 1226

Section § 1226 as titled controls the "apprehension and detention of aliens." Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" is "pending a decision on whether the alien is to be removed from the United States." The plain meaning of the statute is clearly applicable to Edahi—an alien, who was arrested and detained by ICE, and is currently pending removal proceedings. The Notice to Appear, issued by DHS, checked the box titled "You are an alien *present* in the United States who has not been admitted or paroled" rather than checking the box labeled "*arriving* alien." [DE 1-2 at 21 (emphasis added)]. "This supports this Court's conclusion, and reaffirms the Supreme Court's determination in *Jennings v. Rodriguez,* that § 1226(a) applies to aliens already present in the United States, while § 1225(b)(2)(A) applies to arriving aliens. The Respondent's new post hoc

position is simply 'impermissible.'" *Roman v. Olson,* No. CV 25-169-DLB-CJS, 2025 WL 3268403, at *4 (E.D. Ky. Nov. 24, 2025) (citation omitted) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 22 (2020) (holding that "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations.")).

### iv.   Current Contrary Case Law

At the time of the decision in *Barrera*, and this Court's subsequent decision in *Singh v. Lewis,* 2025 WL 2699219 (W.D. Ky. Sep. 22, 2025), no district court reviewing this issue had found in favor of the United States' interpretation of Section 1225. The decisions in agreement are numerous and consistent in application. However, now, the United States cites to four nonbinding district courts, and one BIA decision, to support their interpretation.

The United States cites *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sep. 24, 2025) and *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sep. 30, 2025).  *Chavez* held that Jose Chavez, who was initially granted bond by an IJ and never sought admission into the United States, was properly detained under Section 1225, not Section 1226, as an "applicant for admission" within the statutory confines of Section 1225. 2025 WL 2730228, at *4. Therefore, Chavez was properly detained without a re-determination hearing. *Id.* at *5. Similarly, *Vargas Lopez*, deemed that Mr. Vargas Lopez, who had been in the United States since 2013, was an "applicant for admission" as is "consistent with the conclusion of the BIA in *Hurtado*." 2025 WL 2780351, at *9. The *Vargas Lopez* court also asserted that "*Vargas Lopez may be detained under 1225(b)(2) even if he is also subject to 1226(a)."* *Id.* (emphasis in original). Thus, Mr. Vargas Lopez's request for a bond hearing was denied. *Id.* at 10.

In *Sandoval v. Acuna,* 2025 WL 3048926 (W.D. La. Oct. 31, 2025), the Western District of Louisiana held that Sarai Sandoval, a Columbian native who entered without inspection in

March 2023 was properly detained under Section 1225 because "any alien physically present in the United States who has not been admitted is an 'applicant for admission' regardless of how long they have been in the country." 2025 WL 3048926 at *3. In *Sandoval*, the court quickly dismissed the other library of cases holding the opposite. Putting much of this emphasis on the BIA's decision in *Matter of Yajure Hurtado*, 26 I&N Dec. 216 (2025). *Sandoval*, 2025 WL 304829, at *6 (holding that because the "BIA is a court that possesses subject matter expertise. . . this Court finds *Hurtado* persuasive.").

In *Rojas v. Olson*, the Eastern District of Wisconsin held that Jacial Rojas, a citizen of Mexico who has been living in the United States for seven years is subject to the mandatory detention provisions of Section 1225(b)(2)(A). 2025 WL 3033967, at *13-14 (E.D. Wis. Oct. 30, 2025). This is despite an IJ finding that Rojas should have been released on bond. *Id.* at *2. In concluding that Section 1225 governs Rojas' detention because it is the "better" interpretation, the court admits that the "statutory language and interplay between [Section 1225 and Section 1226] could certainly be more clear." *Id.* at 8.

In *Sandoval*, in finding that that Section 1225(b)(2)(A) applied to the Petitioner, the court stated that the Petitioner did not allege that the Attorney General issued a warrant for Petitioner's arrest. 2025 WL 3048926, at *5. *Sandoval* held that the lack of allegation that the Attorney General issued a warrant indicates that "Petitioner is properly detained under [Section 1225] as an 'applicant for admission,' not [Section 1226]." *Id.* This is in factual contrast to Edahi, who has been issued an arrest warrant and thus supports the allegation that he was detained pursuant to Section 1226, [DE 1-3], which explicitly states that detention under Section 1226 is proper "[o]n a warrant issued by the Attorney General. . ." Section 1226(a).

Also, *Sandoval* did not find that the recent amendments to the Laken Riley Act support interpreting 1225 as inapplicable. *Sandoval* states that "[t]he statutory scheme of the INA does not

render these two provisions mutually exclusive, and there are many other categories of aliens to whom § 1226(a) is applicable, but not § 1225(b)(2)." *Id.* However, even if not mutually exclusive, reading 1225 to apply instead of 1226 to detention would render the Laken Riley amendments pointless. "[B]ecause an alien present in the United States without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," the noncitizens would be entirely covered under Section 1225(b)(2), ICE would no reason to rely on § 1226(c)(1)(E), thus turning the new section near pointless. *See Pizzaro Reyes,* 2025 WL 2609425, at *5 (internal citations omitted). "[Courts] do not lightly assume Congress adopts two separate clauses in the same law to perform the same work." *Taylor*, 596 U.S. at 857. Reading the statute as *Sandoval* does, would therefore have "two separate clauses" performing the "same work." "Considering that § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled," and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well." *Pizzaro Reyes,* 2025 WL 2609425, at *5. Further, *Sandoval* states that many of the district court cases "were decided before" *Hurtado* was published and therefore, many of the district courts are incorrect. *Id.* at 6. Here, the Court disagreed with *Hurtado* soon thereafter it was decided. *Barrea*, 2025 WL 2690565, at *4. But upon reviewing *Hurtado* today, for the reasons stated below, the Court again holds that *Hurtado* is not pursuasive.

*Rojas* too presented a different factual situation than Edahi. *Rojas* concerned a noncitizen who is currently facing an automatic stay of custody pursuant to 8 C.F.R. § 1003.6(c)(1) & 1003.19(i)(2) ("In any case in which DHS has determined that an alien should not be released. . . [the noncitizen] shall remain in abeyance pending decision of the appeal by the Board."). *Rojas*, 2025 3033967, at *2. Here, Edahi is factually distinct as he is challenging his *overall* detention as a violation of his due process rights, not an automatic stay pursuant to a federal regulation. [DE 1 at

2]. This distinction does not impact this Court's statutory analysis. But *Rojas*' due process analysis is inapplicable to Edahi as it pertains to the *Matthews v. Eldridge*, 424 U.S. 319 (1976) factors described below because of this distinction. *See Rojas,* 2025 WL 3033967, at *10-14.

*Rojas* admits that the "interplay between [Section 1225 and Section 1226] could certainly be more clear." 2025 WL 3033967 at *9. Specifically, *Rojas* states that although Section 1225(b)(2) refers to "aliens 'seeking admission,' nothing in the provision suggests the intention Cirrus Rojas proposes." *Id.* at 8. That is, Section 1225 and the phrase 'seeking admission' is "simply another way of referring to aliens who are applicants for admission." *Id.* And the *Rojas* court states that this is the "best read[ing]." But courts are instructed to presume that Congress would *not* add redundancy to statutes. *Gustafson v. Alloyd Co.,* 513 U.S. 561, 574 (1995) ("the [Supreme] Court will avoid a reading which renders some words altogether redundant.") And even if they did, Courts must give effect to every word in the statute. *Corley v. United States*, 556 U.S. 303, 314 (2009). That is, courts must construe statutes as written even if "Congress could have expressed itself more clearly." *Torres v. Lynch*, 578 U.S. 452, 472 (2016). This is a 'cardinal principle' of statutory interpretation that *Rojas* disregards. *TRW Inc.*, 534 U.S. at 31 (2001) (quoting *Duncan*, 533 U.S. at 174). Reading the statute as *Rojas* contends would either ignore the plain meaning of "seeking" (which implies a present tense action, *Seeking*, WEBSTER'S DICTIONARY (11th ed. 2024)) or, more simply, readout "seeking" directly from the statute. But this Court will not ignore words in a statute. This would be expressly against the "cardinal principal" of reading and interpreting every word in a statute. *Corley*, 556 U.S. at 314; *Villa v. Normand,* 2025 WL 3188406, at *7 (S.D. Ga. Nov. 14, 2025) (stating that the *Rojas* court erred in their decision because, for one reason, they "gave little attention to the meaning of the term 'seeking'"). And because "seeking admission" is not defined in the statute compared to other terms, such as "admission," it is this Courts' duty to interpret every word in the statute. *Corley*, 556 U.S. at 314.

*Rojas* fails to do so by ignoring the word "seeking" in "seeking admission." Section 1225(b)(2)(A); *Rojas,* 2025 WL 3033967, at *8.

      *Rojas* also rejects the notion that the Laken Riley Act would make the reading of Section 1225 and Section 1226 superfluous. 2025 WL 3033967 at *9. Stating that, the "legislation passed in 2025 has little bearing on the meaning of the legislation enacted in 1996." *Id.* Again, the Court expressly disagrees with this reasoning. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone* 514 U.S. at 397. *Rojas'* reading of the Laken Riley Act underscores this very premise. If the United States' interpretation of Section 1225 was correct, the new amendments would be unnecessary. As *Pizarro Reyes* stated, the United States' interpretation of Section 1225(b)(2)(A) would either result in a statutory scheme that "ICE would never need to rely on" or that Section 1226(c)(1)(E) would now be "redundant" with 1225(b)(2)(A) as both provisions regulate the mandatory detention of the same category of noncitizens as defined in Section 1182(a)(6)(A)(i). 2025 WL 2609425, *5. Therefore, contrary to *Rojas*, the "newly added provisions" of the Laken Riley Act *do* indicate that a better interpretation of the interplay between Section 1225 and Section 1226 likely does exist. *Rojas*, 2025 WL 3033967 at *9. Through this Courts' reading of Section 1226, compared to *Rojas*, this Court "avoid[s] a reading which renders some words altogether redundant." *Gustafson* 513 U.S. at 574. That is, even if "Congress could have expressed itself more clearly." *Torres*, 578 U.S. at 472; *Chilel v. Sheehan,* 2025 WL 3158617, at *2 (N.D. Iowa Nov. 12, 2025) (rejecting *Rojas* and the United States interpretation of Section 1225 as it relates to the Laken Riley Act because the court rejects "reading in the superfluousness" of their request).

      Further support in this Court's interpretation is the title of Section 1225. *Sandoval* does not mention the title. *Rojas* mentions the title but does not grapple with its text or meaning. *Rojas,* 2025 WL 3033967, at *5-6. The Supreme Court has told lower courts that when a statute is

ambiguous a "title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552 (Alito, J., concurring). As mentioned, the title of Section 1225, "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The addition of "inspection" and "arrival" compared to the more general title of Section 1226 reinforces the more limited and narrower nature of Section 1225.

And contrary to both *Sandoval* and *Rojas*, this Court expressly disagreed with the holding in *Matter of Yajure Hurtado.* 29 I&N Dec. 216 (2025). *Rojas* does not appear to interact with *Hurtado* at all, outside of recognizing that it is "persuasive." *Rojas*, 2025 WL 3033967, at *10. *Sandoval* correctly notes that *Hurtado* is not binding but agrees with the analysis and uses *Hurtado* to differentiate their opinion from other district courts who have disagreed with the BIA. 2025 WL 3048926, at *6. This Court, however, expressly disagrees with the BIA decision and notes that the BIA does not control over federal district courts.

In *Hurtado*, the BIA stated that it was a "legal conundrum" that an individual can be in the United States, without admission, and still is not "seeking admission." 29 I&N Dec. at 221. Thus, the BIA concluded that there is no "legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer 'seeking admission." *Id.* The Court disagrees with this reading of Section 1225 and Section 1226. First, based upon the statutory context and relationship between Section 1225 and Section 1226, the statutory scheme, and most importantly the text, the court finds it difficult to read a noncitizen who is "seeking admission" when the individual never attempted to "seek" admission pursuant to Section 1225(b)(2)(A). This is true, even if the noncitizen may be an "applicant for admission" pursuant to Section 1225(a)(1). That has no bearing on whether he is seeking admission under Section 1225(b)(2)(A). *See, e.g., Del Villar v. Noem,* 2025 WL 3231630, at *5 (W.D. Ky. Nov. 19, 2025) (stating that although the Petitioner

may be "an applicant for admission" he is "not 'seeking admission' because he has been [present] in the United States.") *see also, Alonso,* 2025 WL 3083920, at *5 (holding that even though "Alonso is thus an 'applicant for admission'" he is not 'seeking admission" and Section 1225(b)(2)(A) does not apply).   Also, the BIA held that Section 1225(b) does not render the Laken Riley Act superfluous. *Hurtado,* 29 I&N Dec. at 222. However, as described above, the Court's reading of the relationship between Section 1225 and Section 1226 would likely ignore Congress' will and read the recent amendments as near pointless. It is the "responsibility of the court to decide whether the law means what the agency says." *Perez v. Mortgage Bankers Assn*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring). Further, the Supreme Court recently directed lower courts to not defer any agency interpretation of the law just because a statute may be ambiguous. *Loper Bright Enter*, 603 at 412-413. But instead, "Courts *must* exercise their independent judgement." *Id.* For those reasons, the Court rejects the BIA's interpretation of the Section 1225 and Section 1226.

Additionally, although not briefed by either Party, the Court addresses the recent contrary holding in *Olalde v. Noem*, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025). In *Olalde*, the court held that Franciso Mejia Olalde ("Olalde"), who entered the United States in 1988, was properly detained pursuant to Section 1225(b)(2) because Olalde is an "applicant for admission." *Olalde*, 2025 WL 3131942 at *2. The court reframed the central question as not whether the individual must be seeking admission to be detained pursuant to Section 1225(b)(2), but whether being an "applicant for admission" is sufficient. *Id.* ("The question here is whether Mejia Olalde is an 'applicant for admission.' He is. That question is dispositive.")

*Olalde* first states that the "statute *defines* Mejia Olalde as seeking admission" because "Mejia Olalde is an alien, present in the United States, who has not been admitted, the law defines him to be an applicant for admission. He is thus seeking admission." *Olalde*, 2025 WL 3131942, at *3. But this reasoning is circular, and in contradiction to the statutory definitions found within

8 U.S.C. § 1101. "Admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Nowhere in the statutory scheme is "seeking admission" defined.

*Olalde* further states it "makes no sense to describe an active applicant for admission as somebody who is not 'seeking' admission." *Id.* at 3. Yet, to be detained pursuant to Section 1225(b)(2)(A), that is *precisely* what the text requires. Detention is mandated "if the examining immigration officer determines that an alien *seeking admission is not clearly and beyond a doubt entitled to be admitted,* . . . Section 1225(b)(2)(A) (emphasis added). Holding as *Olalde* does would require the Court to ignore the plain statutory text. But Courts must give effect to every word in the statute. *Corley*, 556 U.S. at 314. In ignoring the very words of Section 1225(b)(2)(A) *Olalde* defies this principle.

Similarly, *Olalde* states that "Congress knows how to limit the scope of the text geographically and temporally when it wants to." 2025 WL 3131942, at *4. *Olalde* references Section 1225(b)(1)(A) as it applies to a noncitizen "who is arriving in the United States" and compares it Section 1225(b)(2) which "has no similar language limiting applicability." First, the scope is already limited through the title as well as the fact that the action applies to "inspections by an immigration officer." Section 1225(b) is already limited by what has come before it. And here, Petitioner was not being inspected by an immigration officer at the time of his detention. He was already in 1229a proceedings, standing before an IJ.

Second, the plain text of Section 1225(b)(2)(A) states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission. . ." The limiting language is the verb "seeking" which limits the group of noncitizens to which it applies. Yet *Olalde* ignores this limiting phrase, going against the "cardinal principle

of statutory construction" that every "clause and word . . . should have meaning." *Duncan*, 533 U.S. at 174; *United States, ex rel.*, 599 U.S. at 432.

Next, unlike *Rojas* and *Sandoval*, *Olalde* addresses the title of Section 1225. Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Section 1225. *Olalde* states that the title suggests a broader view of Section 1225 because of the placement of the semicolons and that Section 1225(b)(2) only references the third subject. *Id.* at *3. The *Olalde* court does not explain why or how Section 1225(b)(2) is strictly limited to the third subject, "referral for hearing" and not "expedited removal of inadmissible arriving aliens." *See id.* at *3. While focusing on the *syntax* of the title of Section 1225, *Olalde* ignores the *text* of the title, which supports a narrower view of the statute. The Supreme Court has instructed that a "title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552 (Alito, J., concurring). The reference to "arriving" in the title, in conjuncture with the verb "seek," in "seeking admission" found in Section 1225(b)(2)(A) "reinforces what the text's [] [] verbs independently suggest." That is, the use of "arriving" and "seek" suggest a limited and narrow application of Section 1225, primarily to "arriving" noncitizens who are then "seeking" admission. Further, here Petitioner was already in 1229a proceedings, actively before an IJ at the time, so it certainly would not appear that he was being "referred for a hearing" as the third phrase of the title states and *Olalde* asserts.

Lastly, *Olalde* states that it is possible to interpret the provisions as merely overlapping, and Congress often takes a "belt and suspenders approach" to legislation." 2025 WL 3131942, at *4. *Olalde* states in part that because Section 1226(c) "regulates not only *what* the Attorney General must do (take aliens into custody), but also *when*" that difference is enough to create a sufficient "belt and suspenders" approach rather than be superfluous. *Id.* But for the reasons described above, if the United States interpretation prevails, the two provisions will be performing

essentially the same function. Both provisions are governing the same group of noncitizens. And when Congress acts, "we presume it intends its amendment to have real and substantial effect." *Stone,* 514 U.S. at 397. Reading the Laken Riley Act as *Olalde* suggests is not simply a "belts and suspenders" approach, but would add redundancy, which the Supreme Court has instructed lower courts to avoid when possible. *Gustafson,* 513 U.S. at 574 ("the [Supreme] Court will avoid a reading which renders some words altogether redundant.")

While the Court addresses the reasoning in these opinions, it is important to note that none of cases are controlling authority within the Sixth Circuit. Further, the BIA is not binding, nor should be viewed as persuasive authority, on any district court. *See Loper Bright Enter*, 603 U.S. at 413 ("courts. . . *may not* defer to an agency interpretation of the law simply because a statute is ambiguous") (emphasis added).

The Court is not surprised that as more cases are resolved across the country that the district courts are not in full agreement. This issue does "present[] a complicated debatable question." *Echevarria v. Bondi,* 2025 WL 2821282, at *5 (D. Ariz. Oct. 3, 2025). But still the plain language text and rules of statutory interpretation dictate the outcome. The Court views this reading as the best and most straightforward interpretation of Section 1225 and Section 1226 based on the text of the statute.

* * *

For the reasons above, Edahi, who has been present in the United States for more than 2 years, is not "seeking admission" into the United States, a fact acknowledged in his notice for appearance by the checking of the box for "present" and not for "arriving."

Section 1226, not Section 1225, applies to his detention.

### B. Lawfulness of Current Detention[3]

As stated, Edahi is detained under Section 1226. Thus, the Court must determine whether the continued detention is in violation of his Due Process.

The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. The United States does address the Due Process claim, but instead focuses solely on the legal argument of Section 1225 versus Section 1226 as referenced above.

#### i. Private Interest

It is undisputed Edahi has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). This is to determine if the conditions are indistinguishable from criminal incarceration. *Id.* Edahi is being held at Hopkins County Jail. [DE 1 at 1].

---

[3] As noted above, *Rojas* concerns the procedural due process of ICE's invocation of an automatic stay pursuant to 8 C.F.R. § 1003.6(c)(1) & 1003.19(i)(2). *Rojas*, 2025 3033967, at *2. Here, Edahi claims a due process violation of his detention.

Additionally, when ICE has initial discretion to detain or release a noncitizen pending removal proceedings, after the initial release, "the petitioner has a protected liberty interest in remaining out of custody." *Hernandez Nieves v. Kaiser*, 2025 WL 2533110, at *4 (N.D. Cal. Sep. 3, 2025). Due process then "requires a hearing before an [IJ] before re-detention." *Id.* And as stated, Edahi was originally placed in full removal proceedings and not detained at the time. [DE 1 at 4]. As a result, the first *Matthews* factor favors Edahi's position.

         *ii.*     Risk of Error

The second factor concerns the risk of the erroneous deprivation of Edahi's liberty. A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that "re-detention without any individualized assessment" establishes a "high risk of erroneous deprivation" of a protected liberty interest). As of today, Edahi has not had a merits bond hearing, with counsel and evidence. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Respondents have not demonstrated that Petitioner is a flight risk or a danger to the community. The United States has not put forth any facts or evidence to demonstrate that Edahi has any criminal or civil infractions. It would appear to the Court the only change within the past year, with respect to Edahi, is the United States' novel interpretation of Section 1225 and Section 1226. Thus, because of a high, if not already evident, risk of erroneous deprivation of Edahi's liberty interest, the second *Matthews* factor favors Edahi.

         *iii.*    United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring

noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao*, 2025 WL 2607924, at \*12. However, a "routine bond hearing" before an IJ presently "minimal" burdens to the United States." *Hyppolite v. Noem,* 2025 WL 2829511, at \*15 (E.D. N.Y. Oct. 6, 2025). These procedures are also already in place. *Id.* Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at \*10 (D. Minn. May 21, 2025). Because of that, the Court finds that the third *Matthews* factor also favors Edahi.

\* \* \*

Therefore, the Court finds that all three *Matthews* factors favor Edahi. The current detention of Edahi is in violation of the Due Process Clause and the INA.

## V.    Remedy

Lastly, even as this Court has found that Edahi is detained pursuant to Section 1226, the United States asserts that he cannot then be released prior to his bond hearing. [DE 12 at 67]. The United States follows this up by asserting that this proposition is a "legal oxymoron." [*Id.*]. And further, the United States claims that "[o]rdering release rather than rather a bond hearing invades the adjudication of the removal proceeding and usurps the Attorney General's statutory authority" to determine if a noncitizen should be detained during removal proceedings. [*Id.* at 69].

Numerous courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel*, 2025 WL 2823607, at \*6; *Beltran Barrera*, 2025 WL 2690565, at \*7; *Roble v. Bondi*, 2025 WL 2443453, at \*5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Thuraissigiam*, 591 U.S. at 107 (emphasis in original). This Court is releasing Edahi because of the "unlawful detention" by ICE and the United States for the reasons stated above. Edahi is not

being released because he is detained pursuant to Section 1226, as the United States contends. But instead, the Court is ordering his release because of the United States' illegal actions *it undertook* in Edahi's detention. *Hyppolite,* 2025 WL 2829511 *16 (holding that the United States cannot "detain [Petitioner] without first conducting a hearing before an IJ" because of the unlawful detention of Petitioner).

As a result of his release stemming from the "unlawful detention" in violation of his due process rights, and *further* pursuant to Section 1226 and its supporting regulations, Petitioner must be provided with a bond hearing on the merits before a neutral IJ prior to any redetention. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Also, courts across the country have routinely held this procedure proper. *Alonso*, 2025 WL 3083920, at *9; *Lopez-Campos,* 2025 WL 2496379, at *9-10; *Mboup v. Field Office Director of N.J.*, 2025 WL 3062791, at *2 (D.N.J. Nov. 3, 2025); *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

Edahi's procedural due process rights are not violated by the very fact he is detained. "Rather, [Petitioner's rights] are violated because he has been detained without a hearing that accords with due process." *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, *11 (W.D. Tex. Sep. 22, 2025) (citing to *Black v. Decker*, 103 F.4th 133, 149-150 (2d Cir. 2024)). Therefore, "the proper remedy" is the "full process due under [Section 1226] which includes a bond hearing before an [IJ]." *Maldanado,* 2025 WL 2968042, at *9-10; *Morales-Martinez v. Raycraft*, 2025 WL 3124695, at *7 (E.D. Mich. Nov. 7, 2025) (holding that because Petitioner had been detained "without a . . . hearing, he is in federal custody in violation of federal law.")

Because Edahi is being detained pursuant to Section 1226, relevant regulations entitle him to a neutral bond hearing. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Therefore, to afford Edahi with the

"full [due] process" under Section 1226, the United States must provide Edahi with a neutral bond hearing before an IJ. *Maldanado,* 2025 WL 2968042, at *9-10.

**VI.     Conclusion**

For the reasons stated above, the United States has violated Edahi's due process rights. The Court **GRANTS** Edahi's Petition for Writ of Habeas Corpus [DE 1] and orders the following:

I.      The United States is directed to release Petitioner Edahi because of the unlawful detention in violation of his due process rights.

II.     The United States must provide him with a bond hearing before a neutral IJ pursuant to Section 1226.

III.    The United States must certify compliance with the Court's order by a filing on the docket **immediately.**